

FILED
2020 Jun-15  AM 09:36
U.S. DISTRICT COURT
N.D. OF ALABAMA

IN THE UNITED STATES DISTRICT COURT OF
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LADARIUS PAYNE , | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| V. | ) | CIVIL ACTION NO. |
| | ) | |
| ALABAMA DEPARTMENT OF | ) | |
| CORRECTIONS; KENNETH PETERS, | ) | |
| ANGELA MIREE; JEFFERSON | ) | |
| S. DUNN; GRANTT CULLIVER; | ) | |
| UNKNOWN INSTITUTIONAL | ) | |
| COORDINATOR FOR THE NORTHERN | ) | |
| REGION OF THE ALABAMA | ) | |
| DEPARTMENT OF CORRECTIONS; | ) | |
| UNKNOWN ASSOCIATE | ) | |
| COMMISIONER FOR PLANS AND | ) | |
| PROGRAMS; UNKNOWN DEPUTY | ) | |
| COMMISIONER OF MAINTENANCE; | ) | |
| CORRECTIONAL OFFICER | ) | |
| STURDIVANT; CORRECTIONAL | ) | |
| OFFICER CUNNINGHAM; | ) | |
| CORRECTIONAL OFFICER | ) | |
| MAKOWSKI; SERGEANT JONES; | ) | |
| SERGEANT JOHNSON; UNKNOWN | ) | |
| SHIFT COMMANDERS, UNKNOWN | ) | |
| HEAD OF INMATE CONTROL | ) | |
| SYSTEMS; UNKOWN INMATE | ) | |
| CONTROL SYSTEMS STAFF; | ) | |
| UNKNOWN INVESTIGATORS; AND | ) | |
| UNKNOWN I & I SUPERVISORS; | ) | *** JURY TRIAL DEMANDED*** |
| | ) | |
| Defendants. | ) | |

COMPLAINT

Plaintiff complains of defendants, stating as follows:

1

## INTRODUCTION

1.      On or about June 14, 2018, Plaintiff Ladarius Payne was brutally assaulted and stabbed while in custody as an inmate at William E. Donaldson Correctional Facility ("Donaldson").

2.      The assault and stabbing resulted from a complete breakdown of security at Donaldson, where murders, rapes, stabbings and beatings have become routine and much of the inmate population possessed contraband weapons.

3.      The dangerous conditions that led to Plaintiff's assault and stabbing were all known to Defendants. In 2016, the Justice Department launched a statewide investigation into the ***unconstitutional*** practices and conditions of Alabama prisons, including William E. Donaldson Correctional Facility.

4.      Defendants responded with an equal and unqualified indifference to the growing security crisis, the reported sexual assaults, inmate on inmate violence, and access to contraband through prison officers and/or staff.

5.      Defendants apathy culminated in Plaintiff, Ladarius Payne, being physically assaulted and stabbed resulting in a punctured lung by inmate Ian Cordier, who was also assigned to the same dorm as Plaintiff.

6.      Plaintiff, Ladarius Payne brings this action to redress his horrific injuries and to end the abuse perpetrated on inmates of Donaldson Correctional Facility due to Defendants' disregard for their health, safety, and well-being.

## JURISDICTION AND VENUE

7.      This action is brought pursuant to 42 U.S.C. § 1983 to redress the Defendants' deprivation of Plaintiff's rights secured by the U.S. Constitution.

8.      This court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state law claims pursuant to 28 U.S.C.  § 1367.

9.      Venue is proper under 28 U.S.C. § 1391(b), as the majority of Defendants reside in this judicial district and the events hand omissions giving rise to the Plaintiff's claims occurred within this judicial district.

## PARTIES

10.      Plaintiff, Ladarius Payne, is a twenty-seven (27) year-old male serving a 5 year sentence for attempted robbery.

11.      Defendant Jefferson S. Dunn is the current Commissioner of the Alabama Department of Corrections ("ADOC"). The Commissioner is the highest ranking official in the ADOC and is responsible for the direction, supervision, and control of the Department of Corrections.  Defendant Dunn undertook the role in January 2015.

12.      Defendant Grantt Culliver is the Associate Commissioner for Operations and Institutional Security for the ADOC, having first undertaken that role in August 2014 and returning to that position in mid-2015 after a demotion in early 2015.   As Associate Commissioner, Defendant Culliver is responsible for ensuring the effective and safe daily operations of prison facilities, including overseeing institutional security, staffing, the Classification Review Board, the Training Division, and the Transfer Division.

13.      Defendant Unknown Institutional Coordinator for Northern Region of the ADOC. In that role, the Institutional Coordinator is responsible for planning, monitoring, and reviewing the day-to-day operations of correctional institutions in this assigned area, which includes Donaldson Correctional Facility. The duties of this role include supervising the Warden of Donaldson Correctional Facility, ensuring safe conditions at Donald Correctional Facility, and

leading the external security audit team.

14.     Defendant Unknown Associate Commissioner for Plans and Programs for the ADOC. Associate Commissioner is responsible for matters including Central Records Division, Research and Planning Division, and Victim Constituent Service.

15.     Defendant Unknown Deputy Commissioner for Maintenance for the ADOC.  The Deputy Commissioner for Maintenance is responsible for maintenance and construction of correctional facilities and also has supervisory responsibility over staffing issues.  The Deputy Commissioner for Maintenance participated in security improvement plan meetings for Donaldson Correctional Facility with Defendant Culliver, the Warden of Donaldson Correctional Facility, and others, and had the ultimate responsibility for implementing and executing a security improvement plan at Donaldson Correctional Facility.

16.     Defendants Dunn, Culliver, Institutional Coordinator for Northern Region of the ADOC, Associate Commissioner for Plans and Programs, and Deputy Commissioner for Maintenance are referred to collectively as the "Defendant Administrative Supervisors".

17.     Defendant Kenneth Peters was the Warden of Donaldson Correctional Facility during the time the incident made the basis of this suit occurred and remains in this position at the time of the filing of this Complaint.  As Warden of Donaldson Correctional Facility, Defendant Peters is responsible for day-to-day operations of the prison, the safety and security of all prisoners at the facility, and the supervision of all subordinate employees.  His responsibilities as Warden include ensuring adequate supervision and monitoring of prisoners, adequate classification of prisoners, appropriate housing assignments for prisoners,  adequate staffing levels, appropriate discipline and deterrence of prisoner and staff misconduct, adherence by staff to search protocols, adequate implementation of internal security audits, and proper installation, repair, and

4

maintenance of locks, cameras, and other security devices necessary for safety and security.

18.     Defendant Angela Miree was Deputy Warden of Donaldson Correctional Facility of the date of the assault and stabbing of Plaintiff, Ladarius Payne.  Defendant Miree's monitoring and oversight responsibilities at Donaldson Correctional Facility covered administrative duties of the facility, including PREA compliance, the Therapeutic Community substance abuse program, the classification and housing assignment process, and investigations into inmate on inmate assaults. Defendant Miree also reviewed and approved all disciplinary incident reports at the facility.

19.     Defendant Unknown Captains were Captains at Donaldson Correctional Facility at the time the incident made the basis of this suit occurred.  Captains are responsible for the safety of all prisoners at Donaldson and the supervision for all security activities and subordinate employees.  Additional duties of Captains include authorizing housing assignments and PREA Compliance.

20.     Defendant Unknown Lieutenants were Lieutenants at Donaldson Correctional Facility at the time the incident made the basis of this suit occurred.

21.     Defendant Unknown Shift Commanders were the shift commanders on duty at Donaldson at the time the incident made the basis of this suit occurred.  Shift Commanders are responsibile for staffing the housing units, overseeing subordinates, ensuring the completion of security checks, and investigating and evaluating requests for housing assignment changes.

22.     Unknown Head of Classification at Donaldson Correctional Facility at the time the incident made the basis of this suit occurred.  As Head of Classification responsibilities include conducting initial screenings; conducting semi-annual progress reviews for prisoners, attended by the warden or his designee, to review their disciplinary histories and other developments,

5

reclassifying prisoners for segregation if their disciplinary history warrants a segregation placement; reclassifying inmates for general population if they no longer require a segregation placement; notifying security staff housing assignment requests; making recommendations that prisoners be transferred to protective custody; and ensuring safe housing assignments for inmates at Donaldson.

23.    Defendant Unknown Head of Inmate Control Systems is responsible for housing assignments at Donaldson and for evaluating, investigating, and approving housing assignment change requests.

24.    Defendant Supervisors acted in a supervisory capacity over other Donaldson corrections employees at all times relevant to this Complaint.  Further, the constitutional injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson.  This misconduct is systemic and occurred with the consent of the Defendant Supervisors, who personally knew about, participated in, facilitated, approved, and/or otherwise condoned a pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of Plaintiff's rights by their actions or by their deliberate indifference/failure to act.

25.    Defendants Officer Sturdivant, Officer Cunningham and Officer Makowski were officers on duty at Donaldson Correctional Facility in the area in which the incident made the basis of this suit occurred.

26.    Defendants Sergeant Jones and Sergeant Johnson were sergeants on duty at Donaldson Correctional Facility in the area in which the incident made the basis of this suit occurred.

6

## DEFENDANT'S FAILURE TO PROTECT MR. PAYNE FROM KNOWN AND SUBSTANTIAL THREAT OF VIOLENCE

27.    The Plaintiff, Ladarius Payne, was an inmate at William E. Donaldson Correctional Facility in the custody and control of the Alabama Department of Corrections at all times material to the incident made the basis of this suit.

28.    On or about June 14, 2018, Mr. Payne was sleeping in his assigned bunk in his assigned dorm, "N Dorm", at Donaldson when he was violently and intentionally attacked by another inmate, Ian Cordier.  Mr. Payne was punched in the right eye, stabbed in the left hip with a knife and/or knife-like sharp object, and stabbed in the right side of his back by the same that resulted in his lung being punctured.

29.    On June 14, 2018, at the time of the incident made the basis of this suit, Correction Officer Cunningham was assigned to N dorm, but was not present in the dorm prior to or at the time of the assault and stabbing of Mr. Payne.

30.    On June 14, 2018, Ladarius Payne after being violently and intentionally attacked in the N Dorm had to crawl to the Cube in search of a corrections officer and medical attention. However, there was no correctional officer in the dorm or in the cube.  These areas were unmanned

31.    After finding no officer in the N dorm or the cube other inmates helped transport Mr. Payne to the Southside Shack where Correctional Officer Sturdivant was located.

32.    Correctional Officer Sturdivant called for medical attention; however, he did not offer or provide any immediate assistance or medical attention to help stop the bleeding.

33.    Upon arriving at the Southside Shack fellow inmate Xavier Watson attempted to use toilet paper to stuff the wounds and stop the bleeding.

34.     Nursing staff and Sergeant Jones responded to Officer Sturdivant's request for help and  moved Mr. Payne from the Southside Shack to the Infirmary.

35.     It was not until Mr. Payne arrived at the Infirmary that his wounds were finally evaluated by medical staff and it was determined he needed emergency care.

36.     Mr. Payne was then transported to UAB Hospital by helicopter.

37.     No correctional officer was monitoring or present in the dorm and/or area of the dorm where Mr.  Payne was attacked prior to, during, or following the attack.

38.     The Correctional Officer assigned to the cube area was not monitoring or present in the cube and/or area of the cube and/or monitoring the dorm where the assault and stabbing took place.

39.     Upon arrival to UAB Hospital , at approximately 12:05 a.m,, Mr. Payne was treated in UAB Emergency room as a Level 1 Trauma victim for two (2) knife stab wounds, one to the mid back and one to his left hip, right periorbital edema, right eyebrow and forehead lacerations, and lacerations to the right eye.

40.     Mr. Payne was diagnosed with a punctured lung and taken for emergency, life-saving surgery.

41.     Mr. Payne was subsequently admitted to UAB Hospital as an inpatient on June 15, 2018, and remained in the hospital until June 19, 2018, when he was discharged and returned to William E. Donaldson Correctional Facility.

42.     As a direct result of being stabbed in the back by inmate Cordier, Mr. Payne's lung was punctured.

43.    Mr. Payne had significant difficulty breathing for more than  three (3) months following this incident and continues to have pain, discomfort and difficulty breathing as a result of being attacked and stabbed.

44.    On June 19, 2018, Mr. Payne was released as an inpatient from UAB hospital and transported back to William E. Donaldson Correctional Facility.

45.    Despite his weakened state and need for medical care following his surgery, Mr. Payne was placed in the Dorm L immediately upon his return to William E. Donaldson Correctional Facility.

46.    Mr. Payne was not offered any type of protection or protective custody upon his return to William E. Donaldson Correctional Facility.

47.    The injuries outlined herein were caused by an assault carried out while in the care and custody of the defendants.  Mr. Payne was viciously and intentionally attacked, beaten, and stabbed repeatedly with no correctional officer in the dorm.  Potential other Fictious Party Defendants may have been involved in the actions which caused these injuries.

## THE EPIDEMIC OF VIOLENCE AT
## WILLIAM E. DONALDSON CORRECTIONAL FACILITY

48.    Years prior to the assault and stabbing of Plaintiff, Ladarius Payne, the Defendants were all aware the prison assaults and stabbings were an epidemic problem at Donaldson.

49.    The violence at Donaldson has steadily increased since 2009.

50.    In fiscal year 2009 the number of reported assaults at Donaldson was just 37.

51.    In each successive year, the number of reported assaults grew at an astonishing rate: to 45 in fiscal year 2010; 96 in fiscal year 2011; 139 in fiscal year 2012; 114 in fiscal year

2013; 136 in fiscal year 2014; 146 in fiscal year 2015; 155 in fiscal year 2016; 133 in fiscal year 2017; and the year Mr. Payne was assaulted and stabbed 185 in fiscal year 2018.

52.     Defendants had knowledge of these violent incidents.

53.     In addition to Defendant's knowledge of the security crisis at Donaldson were incidents, I&I reports, duty officer reports, disciplinary records, medical records, annual and monthly ADOC data reports, prisoner reports, direct observation of incidents, communications among staff, and prisoner lawsuits.

## DEFENDANTS' FAILURE TO ADDRESS THE EPIDEMIC OF VIOLENCE AT WILLIAM E. DONALDSON CORRECTIONAL FACILTIY

54.     Despite having notice of the substantial risk of violence facing prisoners at Donaldson, Defendants failed to take reasonable steps to address and reduce the risk of violence.

55.     In 2009 The Southern Center for Human Rights filed suit claiming inmates at Donaldson Correctional Facility were at risk of harm because of crowding, short staffing and pervasive violence. *John Hicks, et al. v. Gary Hetzel, Warden of Donaldson Correctiona Facility, et al.*

55.     The 2009 suit revealed public reports about inmate attacks did not match the facility's internal records. *John Hicks, et al. v. Gary Hetzel, Warden of Donaldson Correctiona Facility, et al.*

56.     Since 2009 the number of inmate on inmates attacks has increased.

57.     Defendants have taken no corrective action to reduce the violence and improve security at Donaldson.

58.     On or about October 6, 2016 the Department of Justice announced an investigation into the Alabama Prison's after multiple reports made by the EJI.

10

## DEFENDANT'S POOR SUPERVISION AND MONITORING OF DORM N

59.     The Defendant Supervisors failed to promulgate, implement and enforce adequate policies, procedures, and practices necessary to adequately supervise and monitor the housing units, such as the N Dorm, and to maintain the safety of prisoners therein.

60.     As the Defendant Supervisors were all aware, Donaldson was both dangerously overcrowded and dangerously understaffed at the time Mr. Payne was assaulted and stabbed, putting inmates such as Mr. Payne at a substantial risk of harm.

61.     In June of 2018, the month Mr. Payne was assaulted and stabbed, Donaldson reported an inmate population of 1,294 and was at a 133.7 % occupancy rate.

62.     No officer was in the dorm at the time Mr. Payne was assaulted and stabbed.

63.     Physical assaults and robberies were common occurrences.

64.     Weapons such as knives were common.

65.     Random patrols of the housing blocks/dorms by officers occurred infrequently.

66.     The cube officer was not in the cube and was not monitoring the dorm at the time of the assault and stabbing of Mr. Payne. Upon information and belief, the officers in the cube were, at times, absent, asleep, on the phone, or otherwise not pay attention to the prisoners there were there to monitor.

67.     The Defendant Supervisors and Unknown Shift Commanders were all aware of the acute staffing shortages and officer inattentiveness at Donaldson.

68.     These Defendants were likewise aware that the resulting inadequate supervision of prisoners created a dangerous environment that allowed and encouraged homicides, assaults such at the assault and stabbing of Mr. Payne.

11

69.     The Defendant Supervisors further had notice of at least four security deficiencies that, when combined with understaffing and overcrowding, created a substantial risk of harm to inmates: (1) "blind spots" in the housing areas due to limited sight lines; (2) the lack of surveillance cameras; (3) faulty locking mechanisms on the majority of cell doors; and (4) the lack of emergency call buttons in the dorm to summon assistance from staff.

70.     The Defendant Supervisors knew that their existing policies and practices were deficient and created a substantial risk of harm to inmates and still failed to take any meaningful corrective action.

71.     The Defendant Supervisors chose to leave inmates exposed to a continuing risk of serious harm, exhibiting deliberate indifference to their safety.

## DEFENDANTS' ENCOURAGEMENT OF WIDESPREAD PROLIFERATION OF CONTRABAND WEAPONS AT DONALDSON

72.     Defendants were aware of – and, in some cases, encouraged – the widespread proliferation of contraband weapons at Donaldson, exhibiting deliberate indifference to the substantial risk of harm that such weapons created to inmates such as Mr. Payne.

73.     At the time of Mr. Payne's assault and stabbing it was common knowledge among Donaldson staff that inmate population was armed.

74.     Knives, box cutters, and other contraband weapons were commonly used in assaults at Donaldson.

75.     The Defendant Supervisors did nothing to curtail the widespread availability of contraband weapons at Donaldson, exhibiting deliberate indifference to prisoners such as Mr. Payne who was likely and in fact was victimized by such weapons.

12

**PLAINTIFF'S DAMAGES**

76.     As a direct and proximate result of the Defendant's wrongful actions, Plaintiff has suffered severe physical and emotional trauma and injuries.

**CLAIMS**

**Count I- 42 U.S.C. § 1983**
**Eighth Amendment Failure to Protect Against All Defendants**

77.     Plaintiff incorporates each paragraph of this Complaint as if fully restated here.

78.     Pursuant to the Eighth Amendment of the United States Constitution, Plaintiff is entitled to be fee from a known and unreasonable risk of serious harm while in custody of the State.

79.     Defendants, acting individually and in conspiracy with other Defendants, failed to protect Plaintiff.

80.     Defendants knew of and consciously disregarded the substantial risk that Plaintiff would be injured while in custody at Donaldson, failing to protect him from harm.

81.     Additionally, Defendants knew of and consciously disregarded the substantial risk that a known or likely perpetrator of assault would harm prisoners like the Plaintiff while in custody at Donaldson and failed to take any action in response.

82.     This misconduct described in this Count was undertaken with deliberate indifference, malice, willfulness, and/or reckless indifference to the rights of Mr. Payne and others and was objectively unreasonable.

83.     Defendants' misconduct directly and proximately caused Mr. Payne to be subjected to an unreasonable risk of serious harm, and caused him to suffer damages, including

13

pain, suffering, fear, anxiety, rage and other harmful physical and psychological harms, both from the brutal assault and stabbing as well as the devastating aftermath.

**JURY DEMAND**

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Dated: June 13, 2020

Respectfully Submitted,

ANDREW S. LADORES
No. ASB-1469-T69P
Attorney for Plaintiff

OF COUNSEL:
**PEPPER & ODOM**
1929 3rd Avenue North, Suite 600
Birmingham, AL 35203
Telephone:      (205) 250-1107
Mobile:          (407) 761-2166
Telecopier:     (205) 994-6746
Email:           andrew@pepperodom.com