FILED

2020 Nov-17  PM 06:51
U.S. DISTRICT COURT
N.D. OF ALABAMA



IN THE UNITED STATES DISTRICT COURT OF
THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| LADARIUS PAYNE, | a§ | |
| | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CIVIL ACTION NO. |
| | § | |
| ALABAMA DEPARTMENT OF | § | 2:20 – CV – 00839 - AMM |
| CORRECTIONS; KENNETH PETERS, | § | |
| ANGELA MIREE; JEFFERSON | § | |
| S. DUNN; GRANTT CULLIVER; | § | |
| UNKNOWN INSTITUTIONAL | § | |
| COORDINATOR FOR THE NORTHERN | § | |
| REGION OF THE ALABAMA | § | |
| DEPARTMENT OF CORRECTIONS; | § | |
| UNKNOWN ASSOCIATE | § | |
| COMMISIONER FOR PLANS AND | § | |
| PROGRAMS; UNKNOWN DEPUTY | § | |
| COMMISIONER OF MAINTENANCE; | § | |
| CORRECTIONAL OFFICER | § | |
| STURDIVANT; CORRECTIONAL | § | |
| OFFICER RICKY CUNNINGHAM; | § | |
| CORRECTIONAL OFFICER SHAUN | § | |
| MECHALSKE; SERGEANT MARCH | § | |
| JONES; SERGEANT DENNIS JOHNSON; | § | |
| UNKNOWN SHIFT COMMANDERS, | § | |
| UNKNOWN HEAD OF INMATE | § | |
| CONTROL SYSTEMS; UNKNOWN | § | |
| INMATE CONTROL SYSTEMS STAFF; | § | |
| UNKNOWN INVESTIGATORS; AND | § | |
| UNKNOWN I & I SUPERVISORS; | § | *** JURY TRIAL DEMANDED*** |
| | § | |
| DEFENDANTS. | § | |

## PLAINTIFF'S THIRD AMENDED COMPLAINT

**COMES NOW**, the Plaintiff, Ladarius Payne ("Payne"), by and through undersigned

counsel of record, and files this Third Amended Complaint.  Plaintiff specifically realleges and

1

adopts all claims previously set forth in this case and all allegations filed to date as if the same were set forth in full herein. Plaintiff amends Counts I through VI, adds Counts VII through XIV, amends the spelling of the surname for Correctional Officer Shaun "Machowski" to "Mechalske," and further amends the original, First and Second Amended Complaints, and alleges as follows:

## INTRODUCTION

1.      On or about June 14, 2018, the Plaintiff, Ladarius Payne, was brutally assaulted and stabbed while in custody as an inmate at William E. Donaldson Correctional Facility ("Donaldson").

2.      The assault and stabbing resulted from a complete breakdown of security at Donaldson, where murders, rapes, stabbings and beatings have become routine and much of the inmate population possess contraband weapons.

3.      The dangerous conditions that led to Plaintiff's assault and stabbing were all known to Defendants and had become the custom of the ADOC facility in which Mr. Payne was housed.

4.      In 2016, the Justice Department launched a statewide investigation into the ***unconstitutional*** practices and conditions of Alabama prisons, including William E. Donaldson Correctional Facility.

5.      Defendant Dunn responded with an equal and unqualified indifference to the growing security crisis, the reported sexual assaults, inmate on inmate violence, and access to contraband through prison officers and/or staff.

6.      Defendant Dunn's apathy culminated in Plaintiff, Ladarius Payne, being physically assaulted and stabbed resulting in a punctured lung by inmate Ian Cordier, who was also assigned to the same dorm as Plaintiff.

7.      Plaintiff, Ladarius Payne, brings this action to redress his horrific injuries and to

end the abuse perpetrated on inmates of Donaldson Correctional Facility due to Defendant Dunn, Mirre, and Culliver's disregard for their health, safety, and well-being.

## PARTIES

8.      Plaintiff, Ladarius Payne, is a twenty-seven (27) year-old male serving a 5 year sentence for attempted robbery.

9.      Defendant, Jefferson S. Dunn ("Dunn"), is a citizen of Alabama over the age of nineteen (19) years old.  At the time of the incident made the basis of this lawsuit, Defendant Dunn was the Commissioner of the Alabama Department of Corrections ("ADOC").  The Commissioner is the highest ranking official in the ADOC and is responsible for the exercising the authority, functions, and duties of the ADOC, including the appointment of personnel and employees within the ADOC required for the performance of the ADOC's duties towards prisoners it incarcertaes. Those duties include operating a prison system that respects the constitutional and human rights of the persons within the custody of the ADOC, including the rights belonging to Mr. Payne while he is incarcerated at Donaldson Correctional Facility.   Defendant Dunn undertook the role beginning January 2015 and still hold this position as of the date of this filing.  Defendant Dunn is sued in his individual and official capacity.

10.      Defendant, Grantt Culliver ("Culliver"), is a citizen of Alabama over the age of nineteen (19) years old.  At the time of the incident made the basis of this lawsuit, Defendant Dunn was the Associate Commissioner for Operations and Institutional Security for the ADOC.  He first undertook that role in August 2014 and remains in that position as of the date of this filing following his return to this position in mid-2015 after a demotion in early 2015.  As Associate Commissioner, Defendant Culliver is responsible for ensuring the effective and safe daily operations at the ADOC's correctional facilities housing men including Donaldson Correctional

3

Facility where Mr. Payne was house in June 2018.  He is also responsible for overseeing institutional security. staffing, the Classification Review Board, the Training Division, and the Transfer Division at ADOC's correctional facilities, including Donaldson.  Defendant Culliver is sued in his individual and official capacity.

11.     Defendant Unknown Institutional Coordinator for Northern Region of the ADOC. In that role, the Institutional Coordinator is responsible for planning, monitoring, and reviewing the day-to-day operations of correctional institutions in this assigned area, which includes Donaldson Correctional Facility. The duties of this role include supervising the Warden of Donaldson Correctional Facility, ensuring safe conditions at Donald Correctional Facility, and leading the external security audit team.

12.     Defendant Unknown Associate Commissioner for Plans and Programs for the ADOC. Associate Commissioner is responsible for matters including Central Records Division, Research and Planning Division, and Victim Constituent Service.

13.     Defendant Unknown Deputy Commissioner for Maintenance for the ADOC.  The Deputy Commissioner for Maintenance is responsible for maintenance and construction of correctional facilities and also has supervisory responsibility over staffing issues.  The Deputy Commissioner for Maintenance participated in security improvement plan meetings for Donaldson Correctional Facility with Defendant Culliver, the Warden of Donaldson Correctional Facility, and others, and had the ultimate responsibility for implementing and executing a security improvement plan at Donaldson Correctional Facility.

14.     Defendants Dunn, Culliver, Institutional Coordinator for Northern Region of the ADOC, Associate Commissioner for Plans and Programs, and Deputy Commissioner for Maintenance are referred to collectively as the "Defendant Administrative Supervisors".

4

15.     Defendant, Kenneth Peters ("Peters"), is a citizen of Alabama over the age of nineteen (19) years old.  At the time of the incident made the basis of this lawsuit, Defendant Peters was the Warden of Donaldson Correctional Facility and remains in this position at the date of this filing.  As Warden of Donaldson Correctional Facility, Defendant Peters is responsible for day-to-day operations of the prison, the safety and security of all prisoners at the facility, and the supervision of all subordinate employees.  His responsibilities as Warden include ensuring adequate supervision and monitoring of prisoners, adequate classification of prisoners, appropriate housing assignments for prisoners, adequate staffing levels, appropriate discipline and deterrence of prisoner and staff misconduct, adherence by staff to search protocols, adequate implementation of internal security audits, and proper installation, repair, and maintenance of locks, cameras, and other security devices necessary for safety and security.  Defendant Peters is sued in his individual and official capacity.

16.     Defendant, Angela Miree ("Miree"), is a citizen of Alabama over the age of nineteen (19) years old.  At the time of the incident made the basis of this lawsuit, Defendant Miree was Deputy Warden of Donaldson Correctional Facility.  Defendant Miree's monitoring and oversight responsibilities at Donaldson Correctional Facility covered administrative duties of the facility, including PREA compliance, the Therapeutic Community substance abuse program, the classification and housing assignment process, and investigations into inmate on inmate assaults.  Defendant Miree was also responsible for reviewing and approving all disciplinary incident reports at the facility.  Defendant Miree is sued in her individual and official capacity.

17.     Defendant, Warden I ("Warden I"), is a citizen of Alabama over the age of nineteen (19) years old.  At the time of the incident made the basis of this lawsuit, Defendant Warden I was Warden of Donaldson Correctional Facility.  Defendant Warden I's monitoring and oversight

responsibilities at Donaldson Correctional Facility covered administrative duties of the facility, including PREA compliance, the Therapeutic Community substance abuse program, the classification and housing assignment process, and investigations into inmate on inmate assaults. Defendant Warden I was also responsible for reviewing and approving all disciplinary incident reports at the facility.  Defendant Warden I is sued in her individual and official capacity.

18.     Defendant Wexford Health Sources Incorporated ("Wexford Health"), is a corporation doing business in Alabama. At the time of the incident made the basis of this suit, Defendant Wexford Health provided medical and health care to inmates in the ADOC. As the ADOC's contracted health services provider, Defendant Wexford Health is responsible for the health care of inmates in the ADOC facilities including Donaldson Correctional Facility and the treatment of Mr. Payne. Defendant Wexford Health is sued in their individual and official capacity.

19.     Defendant Unknown Captains were Captains at Donaldson Correctional Facility at the time the incident made the basis of this suit occurred.  Captains are responsible for the safety of all prisoners at Donaldson and the supervision for all security activities and subordinate employees.  Additional duties of Captains include authorizing housing assignments and PREA Compliance.

20.     Defendant Unknown Lieutenants were Lieutenants at Donaldson Correctional Facility at the time the incident made the basis of this suit occurred.

21.     Defendant Unknown Shift Commanders were the shift commanders on duty at Donaldson at the time the incident made the basis of this suit occurred.  Shift Commanders are responsible for staffing the housing units, overseeing subordinates, ensuring the completion of security checks, and investigating and evaluating requests for housing assignment changes.

22.     Unknown Head of Classification at Donaldson Correctional Facility at the time the

6

incident made the basis of this suit occurred.  As Head of Classification responsibilities include conducting initial screenings; conducting semi-annual progress reviews for prisoners, attended by the warden or his designee, to review their disciplinary histories and other developments, reclassifying prisoners for segregation if their disciplinary history warrants a segregation placement; reclassifying inmates for general population if they no longer require a segregation placement; notifying security staff housing assignment requests; making recommendations that prisoners be transferred to protective custody; and ensuring safe housing assignments for inmates at Donaldson.

23.    Defendant Unknown Head of Inmate Control Systems is responsible for housing assignments at Donaldson and for evaluating, investigating, and approving housing assignment change requests.

24.    Defendant Unknown Supervisors acted in a supervisory capacity over other Donaldson corrections employees at all times relevant to this Complaint.   Further, the constitutional injuries complained of herein were proximately caused by a pattern and practice of misconduct at Donaldson.  This misconduct is systemic and occurred with the consent of the Defendant Supervisors, who personally knew about, participated in, facilitated, approved, and/or otherwise condoned a pattern and practice of misconduct, or at least recklessly caused the alleged deprivation of Plaintiff's rights by their actions or by their deliberate indifference/failure to act.

25.    Defendants, Correctoinal Officer Sturdivant ("Sturdivant"), Correctional Officer Ricky Cunningham ("Cunningham"), and Correctional Officer Shaun Mechalske ("Mechalske") are citizens of Alabama over the age of nineteen (19) years old.  On or about June 14, 2018, these Defendants were working as Correctional Officers within the course of their employment for ADOC at Donaldson Correctional Facility and assigned to the area(s) in which the incident made

the basis of this suit occurred when Mr. Payne was attacked.  Defendants Sturdivant, Cunningham, and Mechalske are sued in their individual capacity.

26.     Defendants, Sergeant March Jones ("Jones") and Sergeant Dennis Johnson ("Johnson") are citizens of Alabama over the age of nineteen (19) years old.  On or about June 14, 2018, these Defendants were working as Sergeants within the course of their employment for ADOC at Donaldson Correctional Facility and assigned to the area in which the incident made the basis of this suit occurred when Mr. Payne was attacked.  At the time of the incident made the basis of this lawsuit, these defendants had supervisory responsibilities to other co-defendants named and unknown herein.  Defendants Jones and Johnson are sued in their individual and official capacities.

## JURISDICTION AND VENUE

27.     This action is brought pursuant to 42 U.S.C. § 1983 to redress the Defendants' deprivation of Plaintiff's rights secured by the U.S. Constitution.

28.      This court has jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction of his state law claims pursuant to 28 U.S.C.  § 1367.

29.     Venue is proper under 28 U.S.C. § 1391(b), as the majority of Defendants reside in this judicial district and the events hand omissions giving rise to the Plaintiff's claims occurred within this judicial district.

## FACTUAL ALLEGATIONS

## I.     THE ASSAULT ON MR. LADARIUS PAYNE AND ITS EFFECTS

30.     The Plaintiff, Ladarius Payne, was an inmate at William E. Donaldson Correctional Facility ("Donaldson") in the custody and control of the Alabama Department of Corrections ("ADOC") at all times material to the incident made the basis of this suit.

31.     On or about June 14, 2018, Mr. Payne was sleeping in his assigned bunk in his assigned dorm, "N Dorm", at Donaldson when he was violently and intentionally attacked by another inmate, Ian Cordier.  Mr. Payne was punched in the right eye, stabbed in the left hip with a knife and/or knife-like sharp object, and stabbed in the right side of his back.  As a result of this attack, Mr. Payne suffered serious injuries, including but not limited to a punctured lung, right periorbital edema, right eyebrow and forehead lacerations, and lacerations to the right eye.

32.     On or about June 14, 2018 Defendant Dunn was the Appointed Commisioner of the Alabama Department of Corrections, and was in charge of managing the inmate population  and instiution in which Mr. Payne was housed when the incident made the basis of this suit occurred.

33.     On June 14, 2018, at the time of the incident made the basis of this suit, Defendant Correction Officer Cunningham was assigned to N dorm.   However, Defendant Officer Cunningham was not monitoring or present in his assigned area of the dorm prior to, at the time of, or immediately following the assault and stabbing of Mr. Payne.

34.     After being violently and intentionally attacked in the N Dorm, Mr. Payne had to crawl to the Cube in search of a corrections officer and medical attention.  However, this area was also unmanned and there was no correction officer in the cube either.

35.     Defendant Miree, was Deputy Warden at Donaldson Correctional facility on the date of incident made the basis of this suit, Defnedant Miree failed to properly staff the dorms and cubes on June 14, 2018, contributing to the assult and stabbing of Mr. Payne.

36.     Defendant Warden I of William E. Donaldson Correctional facility was the Warden at Donaldson Correctional facility on the date of incident made the basis of this suit, Defnedant Miree failed to properly staff the dorms and cubes on June 14, 2018, contributing to the assult and stabbing of Mr. Payne.

9

37.     No correctional officer was monitoring or present in the Cube, the dorm and/or the area of the dorm where Mr.  Payne was attacked prior to, during, or following the attack.

38.     After finding no officer in the N dorm or the Cube other inmates helped transport Mr. Payne to the Southside Shack where Defendant Correctional Officer Sturdivant was located.

39.     Defendant Correctional Officer Sturdivant failed to offer any medical care contributing to the seriousness of Mr. Payne's injuries therefore depriving Mr. Payne of his constitutional right to be treated in a humae manner while being housed as an inmate with the Alabama Departmetn of Corrections.

40.     Defendant Correctional Officer Sturdivant called for medical attention; however, he did not offer or provide any immediate assistance or medical attention to Mr. Payne despite his profuse bleeding and difficulty breathing.

41.     Upon arriving at the Southside Shack, a fellow inmate, Xavier Watson, attempted to use toilet paper to stuff the wounds and stop the bleeding.

42.     Unknown Medical staff and Defendant Sergeant Jones responded to Officer Sturdivant's request for help and moved Mr. Payne from the Southside Shack to the Infirmary.

43.     It was not until Mr. Payne arrived at the Infirmary that his wounds were finally evaluated by medical staff.

44.     It was determined Mr. Payne's injuries were life threatening, required emergency care, and arrangements were made for Mr. Payne to be transported to UAB Hospital by helicopter.

45.     Upon arrival to UAB Hospital , at approximately 12:05 a.m., Mr. Payne was treated at UAB Emergency room as a Level 1 Trauma victim for two (2) knife stab wounds, one to the mid back and one to his left hip, right periorbital edema, right eyebrow and forehead lacerations, and lacerations to the right eye.

10

46.     Most significantly, Mr. Payne was diagnosed with a punctured lung and taken for emergency, life-saving surgery.

47.     Mr. Payne was subsequently admitted to UAB Hospital as an inpatient on June 15, 2018, and remained in the hospital until June 19, 2018, when he was discharged and returned to William E. Donaldson Correctional Facility.

48.     As a direct result of being stabbed by inmate Cordier, Mr. Payne suffered serious injuries, most significantly a punctured lung.

49.     Mr. Payne had significant difficulty breathing for more than three (3) months following this incident and continues to have pain, discomfort and difficulty breathing as a result of the injuries suffered in this attack.

50.     On June 19, 2018, Mr. Payne was released as an inpatient from UAB hospital and transported back to William E. Donaldson Correctional Facility.

51.     Despite his weakened state and need for medical care following his surgery, Mr. Payne was placed in Dorm L immediately upon his return to William E. Donaldson Correctional Facility.

52.     Mr. Payne was not seen by a specialist after returning to Donaldson.

53.     Mr. Payne was not offered any type of protection or protective custody upon his return to William E. Donaldson Correctional Facility.

54.     Mr. Payne was not seen by the proper medical staff to properly treat

his injuries after returning to Donaldson therefore resulting in a total denial of medical care rather than a difference of opinion for medical professionals and a deprivation of. His constutional rights. . *Douglas v. EL RENO, REFORMATORY*, 404 F. Supp. 1316 (W.D. Okla, 1975).

55.     The injuries outlined herein were caused by an assault carried out while in the care and custody of the Defendants collectively.  Mr. Payne was viciously and intentionally attacked, beaten, and stabbed repeatedly with no corrections officer in the dorm.

## II.     THE ASSAULT OF MR. PAYNE WAS A MANIFESTATION OF THE DEFENDANT'S POLICEIS AND CUSTOMS

56.     The Eighth Amendment of the United States Constitution requires that prisoners be furnished with basic human needs, housed in safe conditions, and not be subjected to violence. Despite these constitutional protections, Alabama's prisoners are subject to the nation's highest prison homicide rate while incarcerated in ADOC prisons.

57.     On April 2, 2019, the Justice Department issued its notice letter ("Notice Letter") to the State of Alabama that it had concluded, based on its investigation spanning 2016 through 2019, that the conditions in Alabama's male prisons violate the Eighth Amendment's protection from cruel and unusual punishment due to ADOC's failure to "protect prisoners from serious harm and substantial risk of serious harm." The Justice Department also concluded that ADOC's constitutional violations are "severe, systemic" and "pursuant to a pattern or practice or practice of resistance to the full enjoyment of rights secured by the Eighth Amendment."

58.     Defendant Dunn had personal knowledge of the Eighth Amendment violations found by the Department of Justice investigations and made not attempt to take action.

### 1.  Alabama Prisons Are Chronically Overcrowded and Egregiously Understaffed

59.     ADOC prisons, including Donaldson where Mr. Payne was housed, have been systemically understaffed for years creating an unsafe and extremely dangerous environment for the prisoners in ADOC custody.  Defendant Administrative Supervisors were aware of the overcrowding and understaffing issues within Donaldson specifically and knew the excessive

12

amount of violence within the ADOC prisons generally that has resulted from overcrowding and understaffing.

60.     While the population of ADOC's prisons swells, the level of staff continues to dwindle despite acknowledgment by Defendant Dunn and the Defendant Administrative Supervisors.

61.     Defendant Dunn stated in his 2018 Annual Report for the Fiscal Year addressed to Governor Kay Ivey, "In 2018, ADOC implemented an aggressive plan to optimize the chronic understaffing of correction officers through a comprehensive recruiting and marketing initiative…….The plan comes at a critical time as ADOC prepares to move forward to address significant challenges caused by long-term issues in an overpopulated prison system that has been under-resourced for decades."

http://www.doc.state.al.us/docs/AnnualRpts/2018AnnualReport.pdf

62.     A spokesperson for the ADOC has observed: "There is a direct correlation between the level of prison violence and the shortage of correctional staff in an overpopulated prison system with limited resources for rehabilitating offenders[.]" Jennifer Horton, *ADOC: Staffing shortages, contraband fueling prison violence,* WSFA News (Dec. 18, 2018). https://www.wsfa.com/2018/12/19adoc-staffing-shortages-contraband-fueling-prison-violence/

63.     The Justice Department found that overcrowding of Alabama's Prisons contributes to the serious harm to prisoners, which is a violation of the Eighth Amendment; "Alabama has one of the most overcrowded prison systems in the nation."

64.     At the time the Justice Department published its report, the ADOC housed "approximately 16,327 prisoners in its major correctional facilities, but the system was designed to hold 9,882."

65.     The time span in which Alabama's prisons have been chronically overcrowded and understaffed has resulted in a pattern of excessive violence, both staff on inmate and inmate on inmate all of which is known and acknowledged by Defendant Dunn and the Defendant Administrative Supervisors

66.     "While overcrowding is not an Eighth Amendment violation on its own, it can cause and exacerbate unconstitutional conditions. *See Rhodes v. Chapman,* 452 U.S. 337, 347-50 (1981); *Collins v. Ainsworth,* 382 F.3d 529, 540 (5th Cir. 2004); *French v. Owns,* 777 F.2d 1250, 1252-53 (7th Cir. 1985) (holding that overcrowding was unconstitutional where it led to unsafe and unsanitary conditions)."

67.     The level of understaffing and inadequate supervision in the ADOC directly contributed to the violence and risk of substantial harm to prisoners, such as Mr. Payne.

68.     William E. Donaldson Correctional Facility, where Mr. Payne was housed at the time of assault and stabbing, has been continuously and systematically overcrowded for years, creating the dangerous environment for prisoner on prisoner assaults.

a.      William E. Donaldson is a level-5 maximum security prison designed capacity was 968 inmates. However, at the time of Mr. Payne's assault and stabbing the monthly end populations was 1,294 inmates. Alabama Department of Corrections, *Monthly   Statistical   Report   for   January   2020,* http://www.doc.state.al.us/docs/MonthlyRpts/2018-06.pdf

b.      Because there are not enough officers to adequately staff the prison, incarcerated persons at Donaldson are frequently under supervised or completely unsupervised for long periods of time.

14

c.     As illustrated by what happened to Mr. Payne, and multiple other inmates at Donaldson, the significant shortage of officers has led to a fundamental lack of supervision and basic security at the facility.

d.     The ADOC has failed to take actions to correct these deficiencies and Donaldson remains severally overcrowded today.  As of July 2020, Donaldson's month end population was 1,508, which is 55.8% greater than its design capacity. Alabama Department of Corrections, *Monthly Statistical Report for July 2020,* doc.state.al.us/docs/MonthlyRpts/July%202020.pdf

69.    AODC's overcrowding and understaffing has been widespread and continuous across all its facilities. Other examples of overcrowding and understaffing across ADOC prisons include, but are not limited to:

a.     At the time of Mr. Payne's assault and stabbing, Kilby, a maximum-security prison and the ADOC's initial processing center for inmates entering to ADOC, had a design capacity of 440 inmates but reported a monthly end population of 1,295, which is an occupancy rate of 294.32%.  Kilby remains overcrowded.

b.     At this time of Mr. Payne's assault and stabbing, Elmore Correctional Facility, a medium security prison with a design capacity 600 inmates reported a monthly end population of 1,172, which is an occupancy rate of 195.33%.  Elmore remains overcrowded.

70.    The Justice Department found "the deficit in the number of security staffing working any given shift can be worse than 20% below required levels" U.S. Dep't of Justice, Investigation of Alabama State Prisons for Men (April 2, 2019), https://www.justice.gov/opa/press-release/file.

15

71.    In addition to understaffing, Defendant Correction Officers are also required to work "voluntary mandatory overtime" believed to be authorized by Defendant Administrative Supervisors, Defendant Miree and Defendant Peters. These are forced hours causing staff to be exhausted and overworked.  The Justice Department found "staffing prisons with exhausted staff makes  for ineffective and, in this system, potentially life-threatening outcomes." U.S. Dep't of Justice, Investigation of Alabama State Prisons for Men (April 2, 2019), https://www.justice.gov/opa/press-release/file.

72.    At Donaldson, prison staff including Defendants Sturdivant, Cunningham, and Defendant Mechalske, encourage and facilitate the culture of violence through their indifference and failure to enforce polices. Upon information and belief, these conditions existed at Donaldson at the time of Mr. Payne's assault and stabbing.

73.    When inmates, such as Mr. Payne, are injured in violent incidents, officer responses are drastically delayed and inadequate, especially in relation to the severity of inmate injuries. Further, officers often make little or no effort to investigate or protect injured inmates from future attacks.   Instead, officers often retaliate against inmates who persist in reporting incidents. Numerous Defendant officers denied or delayed Mr. Payne's medical care after his assault and stabbing and the investigation was wholly inadequate.

2.    **Defendants' Knowledge that Alabama Prisons Are Chronically Overcrowded and Egregiously Understaffed**

74.    Defendants, Alabama Department of Corrections and other named Defendants Sturdivant, Cunningham, and Defendant Mechalske, Sergeants, and Administrative Supervisors, Defendant Miree and Defendant Peters, were aware of the overcrowding and understaffing issues within ADOC, and specifically at Donaldson. They also had specific knowledge of the excessive

amount of violence that occurs within the ADOC prisons, including Donaldson, as a result of the overcrowding and understaffing.

75.     On October 6, 2016, the Justice Department put the Defendant, Alabama Department of Corrects and Defendants Administrative Supervisors on notice that it opened a Civil Rights of Institutionalized Persons Act ("CRIPA') Investigation into Alabama's male prisons, including Donaldson. *Department of Justice Press Release* (Oct. 6, 2019).

76.     On April 2, 2019, the Justice Department issued the Notice Letter detailing the findings of its CIRPA investigation.   The "combination of ADOC's overcrowding and understaffing" was identified as key factors leading to inadequate supervision, unsafe housing and violence.

77.     Per the Justice Department's findings, correctional officer staffing levels across ADOC are "at crisis level."

        a.     Based on information available during the CIRPA investigations, as of June 2018, around the same time Mr. Payne was assaulted and stabbed, Alabama's prisons were employing only 1,072 of the 3,326, or less than 1/3 of the total number of correctional officers the ADOC was authorized to hire.

        b.     Of the 13 facilities investigated by the Justice Department, only three had correctional officer staffing levels over 40% of the authorized total officers; Donaldson employed a mere 35% of its total authorized correction officers.

78.     "The mission of the ADOC is to confine, manage and provide rehabilitative programs for convicted felons in a safe, secure and humane environment, utilizing professionals

who are committed to public safety and to the positive re-entry of offenders into society," yet the violence has risen year after year at an alarming rate according to the ADOC's monthly reports.

79.     The United States District Court for the Middle District of Alabama (the "Middle District") has noted that, "Understaffing has been a persistent, systematic problem that leaves many ADOC facilities incredibly dangerous and out of control….[A] severe shortage of officers leads to dangerous and violent conditions, especially in high-security facilities with overcrowded dormitories" *Braggs,* 257 F. Supp. 3d at 1200.

80.     The Middle District also found that "[t]he combination of overcrowding and understaffing leads to an increased level of violence, both because of the difficulty of diffusing tension and violence in an overcrowded open-dormitory setting, and because of the lack of supervision by correctional officers." *Braggs,* 257 F. Supp. 3d at 1200.

81.     Although Defendant Alabama Department of Corrections,   Defendant Administrative Supervisors, Defendant Miree and Defendant Peters, were aware of the history of widespread violence throughout the ADOC's male prisons and the connection between violence and the ADOC's chronic problems with overcrowding and understaffing,; the Defendants failed to take meaningful steps prior to Mr. Payne's  assault and stabbing to significantly alter systemic staffing disparities creating an environment where violence was widespread and persistent.

82.     In the January 2020 budget presentation to the Alabama Legislature, it was noted "there is a direct correlation between overcrowding and understaffing." *Prison Officials Request $42 Million Increase to Hire Staff, Improve Healthcare, WBHM.org, University of Alabama, January 21, 2020.*

83.     Defendant Alabama Department of Corrections and Defendant Administrative Supervisors have failed to address overcrowding and staffing issues year after year; Alabama's

prisons are saturated with a culture of violence and the new minimal efforts have still yet to curve the trend level of prisoner-on-prisoner assaults and violence, the level of staff-on-prisoner assault, and the death tolls still increase.

### III.   THE EPIDEMIC OF VIOLENCE AT WILLIAM E. DONALDSON CORRECTIONAL FACILITY

84.     Years prior to the assault and stabbing of Mr. Payne, the Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree and Defendant Peters had knowledge that assaults and stabbings were an epidemic problem within the Donaldson facility.

85.     The violence at Donaldson has steadily increased since 2009.

86.     In fiscal year 2009 the number of reported assaults at Donaldson was just 37.

87.     In each successive year, the number of reported assaults grew at an astonishing rate: to 45 in fiscal year 2010; 96 in fiscal year 2011; 139 in fiscal year 2012; 114 in fiscal year 2013; 136 in fiscal year 2014; 146 in fiscal year 2015; 155 in fiscal year 2016; 133 in fiscal year 2017; and the year Mr. Payne was assaulted and stabbed 185 in fiscal year 2018.

88.     The increase in assaults is correlated to the overcrowding and understaffing at Donaldson and throughout the Alabama Department of Corrections.

89.     Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree and Defendant Peters had knowledge of the increase in violent incidents and violated the Eighth Amendment rights of Mr. Payne by failing to take any action to limit its proliferation, protect him from violence, and provide him a safe environment.

90.     Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree and Defendant Peters' knowledge of the security crisis was from

multiple sources, including but not limited to, Defendants Culliver, Dunn, Peters and Miree being briefed about overcrowding, correctional understaffing, a review of prior violent incidents at Donaldson, ongoing violence within Donaldson, and threats of violence towards prisoners and correctional officers at Donaldson, as well as I&I reports, duty officer reports, disciplinary records, medical records, annual and monthly ADOC data reports, prisoner reports, direct observation of incidents, communications among staff, and prisoner lawsuits.

**IV. DEFENDANTS' FAILURE TO ADDRESS THE EPIDEMIC OF VIOLENCE AT WILLIAM E. DONALDSON CORRECTIONAL FACILTIY**

91.    Despite having notice of the substantial risk of violence facing prisoners at Donaldson, Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree and Defendant Peters failed to take reasonable steps to address and reduce the risk of violence.

92.    In 2009 The Southern Center for Human Rights filed suit claiming inmates at Donaldson Correctional Facility were at risk of harm because of crowding, short staffing and pervasive violence. *John Hicks, et al. v. Gary Hetzel, Warden of Donaldson Correctiona Facility, et al.*

93.    The 2009 suit revealed public reports about inmate attacks did not match the facility's internal records. *John Hicks, et al. v. Gary Hetzel, Warden of Donaldson Correctional Facility, et al.* Conditions at Donaldson Correctional Facility amount to an environment in which Mr. Payne was subjected to violence and constant threats of violence.  These conditions included but were not limited to the following:

a.   Prisoners were not properly housed based on their proclivity towards violence.

b.   Correctional officers were not disciplined or removed from the prison population in response to previous acts of violence, use of excessive forces, or other indicators that they were unlikely to refrain from violating prisoners' rights.

c.   Donaldson Correctional Facility was known to house more prisoners than it could accommodate.

d.   Donaldson Correctional Facility was routinely understaffed.

e.   Prison officials and correctional officers failed to keep track of prisoners' whereabouts, nor did they provide for effective monitoring of the conduct of prisoners or of correctional officers by the correctional officers' supervisors.

f.   Prisoners were free to roam freely; doors and locks were either not functioning or were not used properly throughout Donaldson Correctional Facility.

g.   Prisoners were armed and either encouraged to use violence or not discouraged from using violence.

h.   Donaldson Correctional Facility was not operated in accordance with written policies. To the extent policies nominally existed, they were not followed, and Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree and Defendant Peters knew the policies were not followed. Nevertheless, these Defendants failed to

21

enforce the policies, and instead, allowed and encouraged a state of lawlessness to persist at Donaldson Correctional Facility.

 i. Prisoners were either not disciplined, or were disciplined in ways that were not provided for underwritten policies, resulting in rampant violations of prisoners' constitutional rights, including the right to be free from the use of excessive force.

 j. Correctional officers, including Defendants Sturdivant Defendant Cunningham and Defendant Mechalske, were stationed out of earshot or eyesight of prisoners, and supervisors were stationed out of earshot or eyesight of the correctional officers they were supervising.

94. Since 2009 the number of inmate on inmates attacks has increased.

95. Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree and Defendant Peters have taken no corrective action to reduce the violence and improve security at Donaldson.

96. On or about October 6, 2016 the Department of Justice announced an investigation into the Alabama Prison's after multiple reports made by the EJI.

**V. LACK OF SUPERVISION AND MONITORING OF DORM N BY DEFENDANTS**

97. The Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree, and Defendant Peters failed to promulgate, implement and enforce adequate policies, procedures, and practices necessary to adequately supervise and monitor the housing units, such as the N Dorm, and to maintain the safety of prisoners therein.

98.     As the Defendants were all aware, Donaldson was both dangerously overcrowded and dangerously understaffed at the time Mr. Payne was assaulted and stabbed, putting inmates such as Mr. Payne at a substantial risk of harm.

99.     In June of 2018, the month Mr. Payne was assaulted and stabbed, Donaldson reported an inmate population of 1,294, an occupancy rate of more than 133.7 % of capacity.

100.     On the night of the assault and stabbing of Mr. Payne Defendant Sturdivant was assigned to N Dorm; and was not in the dorm before, during or after the assault and stabbing of Mr. Payne.

101.     Physical assaults and robberies were common occurrences.

102.     Weapons such as knives were common.

103.     Despite these known risks to the safety of the inmates, no correctional officer, including Defendant Officer Strudivant, Donaldson prison official, or ADOC employee was present at his/her assigned location in the dorm area to monitor the dorm and maintain a safe environment for the inmates at the time Mr. Payne was assaulted and stabbed.

104.     Random patrols of the housing blocks/dorms by officers did not occur or occurred infrequently.

105.     Further, no correctional officer, Donaldson prison official, or ADOC employee was present at his/her assigned location within the Cube in order to monitor the dorm or the Cube at the time of the assault and stabbing of Mr. Payne. Upon information and belief, officers were frequently absent from their assignment in the Cube and when present, officers were asleep, talking on the phone, or otherwise distracted and did not pay attention to the goings-on within the dorm or the prisoners they were there to monitor and maintain control of.

23

106.    The Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree, and Defendant Peters were all aware of the acute staffing shortages and officer inattentiveness at Donaldson.

107.    The Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree, Defendant Peters and Defendant Correctional Officer Sturdivant, Cunningham and Mechalske were likewise aware that the resulting inadequate supervision of prisoners created a dangerous environment that allowed and encouraged homicides, assaults, and prison violence, such at the assault and stabbing of Mr. Payne.

108.    The Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree, and Defendant Peters further had notice of at least four security deficiencies that, when combined with understaffing and overcrowding, created a substantial risk of harm to inmates: (1) "blind spots" in the housing areas due to limited sight lines; (2) the lack of surveillance cameras; (3) faulty locking mechanisms on the majority of cell doors; and (4) the lack of emergency call buttons in the dorm to summon assistance from staff.

109.    The Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree, and Defendant Peters knew that their existing policies and practices were deficient and created a substantial risk of harm to inmates and still failed to take any reasonable, meaningful corrective action to adequately staff Donaldson and/or provide for the safety of Mr. Payne and prevent the extreme violence at the hands of another prisoner within Donaldson.

110.    The deliberate indifference of The Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree, Defendant Peters, Defendant

Correctional Officers Sturdivant, Cunningham, Mechalske  to Mr. Payne's constitutional rights exposed him to a continuing and substantial risk of serious harm to his health and safety.

## VI. DEFENDANTS' KNOWLEDGE AND INVOLVEMENT IN THE WIDESPREAD PROLIFERATION OF CONTRABAND WEAPONS AT DONALDSON

111.    Defendant Correctional Officers Sturdivant, Cunningham, Mechalske  were aware of – and, in other cases, encouraged – the widespread proliferation of contraband weapons at Donaldson, exhibiting deliberate indifference to the substantial risk of harm that such weapons created to inmates such as Mr. Payne.

112.    At the time of Mr. Payne's assault and stabbing it was common knowledge among Donaldson staff that inmate population was armed.

113.    Knives, box cutters, and other contraband weapons were commonly used in assaults at Donaldson.

114.    The Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree, Defendant Peters, Defendant Correctional Officers Sturdivant, Cunningham, Mechalske failed to take any action to curtail the widespread availability of contraband weapons at Donaldson, exhibiting deliberate indifference to prisoners such as Mr. Payne who was likely and in fact was victimized by such weapons.

## VII. PLAINTIFF'S DAMAGES

115.    As a direct and proximate result of the The Defendant Alabama Department of Corrections, Defendant Administrative Supervisors, Defendant Miree, Defendant Peters, Defendant Correctional Officers Sturdivant, Cunningham, Mechalske's wrongful actions, Plaintiff has suffered severe physical injuries and emotional trauma and injury.  As of the date of this filing,

no personnel from the Alabama Department of Corrections has expressed sympathy to Mr. Payne for his injuries or his recovery or explained the circumstances surrounding his attack.

## VIII.   EXHAUSTION OF ADMINISTRATIVE REMEDIES

116.   There are no administrative remedies within the Alabama Department of Corrections for Plaintiff to exhaust.

## IX.   CAUSES OF ACTION

### COUNT I

**Violation of the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983**

**Failure to Protect**

117.   Plaintiff adopts and incorporates by reference each and every allegation contained in the paragraphs 1 through 98  of this Amended Complaint as if fully set forth herein.

118.   Pursuant to the Eighth Amendment of the United States Constitution, Plaintiff is entitled to be free from a known and unreasonable risk of serious harm while in custody of the State.

119.   The policy and custom of understaffing and overcrowding within the ADOC, and specifically at Donaldson Correctional Facility, under the direction of Defendants Dunn and Defendant Culliver, lead to the deprivation of Mr. Payne's rights while he was incarcerated with the ADOC.

120.   Additionally, Defendant Dunn and Defendant Culliver acted individually and in conspiracy with all other Defendants in failing to protect Mr. Payne from harm, by overcrowding and understaffing the ADOC facility of Donaldson and having knowledge that leaving the area(s) where he was attacked unmonitored, and not creating a safe environment.

26

121.    Defendant Dunn and Defendant Culliver had actual, personal knowledge of the history of widespread violence, the increased threat of violence to prisoners like Mr. Payne due to the understaffing and overcrowding throughout the ADOC and Donaldson Correctional Facility, and the substantial risk to Mr. Payne's health posed by the policies and customs, and these known issues and deficiencies.

122.    Further, Defendant Dunn and Defendant Culliver were keenly aware of inmates propensity to commit violence and cause harm to other prisoners, like the Plaintiff.

123.    Defendant Dunn and Defendant Culliver consciously disregarded the substantial risk of serious harm to Mr. Payne and violated his constitutional rights by their failure properly staff ADOC facilities, including Donaldson which directly lead to no correctional officer being in the area when Mr. Payne was attacked.  Leaving these areas unmonitored created an unsafe environment and unreasonably increased the risk of the threat of violence to Mr. Payne and substantial harm to his health and safety.

124.    Defendants, Dunn and Culliver, consciously disregarded the increased risk of violence and substantial harm to Mr. Payne in violation of his constitutional rights by their failure to properly staff and to properly train the minimal staff that was employeed to adequately handed forseeable violence caused by overcrowding at Donaldson, and/or take other reasonable measures within ADOC and at Donaldson to monitor the areas where Mr. Payne was attacked, ensure or maintain a safe environment for prisoners in their care, and protect Mr. Payne from prisoner on prisoner violence.

125.    The misconduct described in this Count was undertaken by the Defendant Dunn and Defnedant Culliver with deliberate indifference, malice, willfulness, and/or reckless indifference to the known prisoner-on-prisoner violence and constant threats of violence at

27

Donaldson Correctional Facility in violation of the constitutional rights of Mr. Payne and other inmates house there.

126.    Through the deliberate indifference of Defendants, Dunn and Cullivers, including failure to implement measures to protect prisoners from violence, provide adequate staffing and reduce overcrowding Mr. Payne was subjected to an unreasonable risk of serious harm, and directly and proximately caused Mr. Payne to suffer damages, including pain, suffering, fear, anxiety, and other physical and psychological harms, both from the brutal assault and stabbing as well as the devastating aftermath.

## COUNT II

**Violation of the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983**

**Failure to Protect**
**(Against Defendants Peters and Miree)**

127.    Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 1 through 57, 61 through 70 and 72 through 128 of this Amended Complaint as if fully set forth herein.

128.    Pursuant to the Eighth Amendment of the United States Constitution, Plaintiff is entitled to be free from a known and unreasonable risk of serious harm while in custody of the State.

129.    The policy and custom of understaffing and overcrowding within the Donaldson Facility, under the direction of Defendants, Peters and Miree, lead to the deprivation of Mr. Payne's rights while he was incarcerated at Donadlson.

130.    Additionally, Defendants, Peters and Miree, acted individually and in conspiracy

with all other Defendants in failing to protect Mr. Payne from harm, by overcrowding and understaffing the ADOC facility of Donaldson and having knowledge that leaving the area(s) where he was attacked unmonitored, and not creating a safe environment.

131.    Defendants, Peters and Miree, had actual, personal knowledge of the history of widespread violence, the increased threat of violence to prisoners like Mr. Payne due to the understaffing and overcrowding throughout Donaldson Correctional Facility, and the substantial risk to Mr. Payne's health posed by the policies and customs, and these known issues and deficiencies.

132.    Further, Defendants, Peters and Miree, were keenly aware of inmates propensity to commit violence and cause harm to other prisoners, like the Plaintiff.

133.     Defendants, Peters and Miree, consciously disregarded the substantial risk of serious harm to Mr. Payne and violated his constitutional rights by their failure properly staff Donadlson, including thei shift and dorm in which Mr. Payne was attack and stabbed, which directly lead to no correctional officer being in the area when Mr. Payne was attacked and stabbed. Leaving these areas unmonitored created an unsafe environment and unreasonably increased the risk of the threat of violence to Mr. Payne and substantial harm to his health and safety.

134.    Defendants, Peters and Miree, consciously disregarded the increased risk of violence and substantial harm to Mr. Payne in violation of his constitutional rights by their failure to properly staff and to properly train the minimal staff that was employed to adequately handel forseeable violence caused by overcrowding at Donaldson, and/or take other reasonable measures within  Donaldson to monitor the areas where Mr. Payne was attacked, ensure or maintain a safe environment for prisoners in their care, and protect Mr. Payne from prisoner on prisoner violence.

135.    The misconduct described in this Count was undertaken by the Defendants, Peters

29

and Miree, with deliberate indifference, malice, willfulness, and/or reckless indifference to the known prisoner-on-prisoner violence and constant threats of violence at Donaldson Correctional Facility in violation of the constitutional rights of Mr. Payne and other inmates housed there.

136.    Through the deliberate indifference of Defendants, Peters and Miree, including failure to implement measures to protect prisoners from violence, provide adequate staffing and reduce overcrowding Mr. Payne was subjected to an unreasonable risk of serious harm, and directly and proximately caused Mr. Payne to suffer damages, including pain, suffering, fear, anxiety, and other physical and psychological harms, both from the brutal assault and stabbing as well as the devastating aftermath.

## COUNT III

**Violation of the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983**

**Failure to Protect
(Against Defendants Jones and Johnson)**

137.    Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 1 through 57, 61 through 70, and 72 through 128 of this Amended Complaint as if fully set forth herein.

138.    Pursuant to the Eighth Amendment of the United States Constitution, Plaintiff is entitled to be free from a known and unreasonable risk of serious harm while in custody of the State.

139.    The policy and custom of understaffing and overcrowding within the Donaldson Facility, under the direction of Defendants, Jones and Johnson, lead to the deprivation of Mr. Payne's rights while he was incarcerated at Donadlson.

140.    Additionally, Defendants, Jones and Johsnon, acted individually and in conspiracy

with all other Defendants in failing to protect Mr. Payne from harm, by overcrowding and understaffing the ADOC facility of Donaldson and having knowledge that leaving the area(s) where he was attacked unmonitored, and not creating a safe environment.

141.    Defendants, Jones and Johnson, had actual, personal knowledge of the history of widespread violence, the increased threat of violence to prisoners like Mr. Payne due to the understaffing and overcrowding throughout Donaldson Correctional Facility, and the substantial risk to Mr. Payne's health posed by the policies and customs, and these known issues and deficiencies.

142.    Further, Defendants, Jones and Johnson, were keenly aware of inmates propensity to commit violence and cause harm to other prisoners, like the Plaintiff.

143.     Defendants, Jones and Johsnon, consciously disregarded the substantial risk of serious harm to Mr. Payne and violated his constitutional rights by their failure properly staff Donadlson, including the shift and dorm in which Mr. Payne was attack and stabbed, which directly lead to no correctional officer being in the area when Mr. Payne was attacked and stabbed. Leaving these areas unmonitored created an unsafe environment and unreasonably increased the risk of the threat of violence to Mr. Payne and substantial harm to his health and safety.

144.    Defendants, Jones and Johnson, consciously disregarded the increased risk of violence and substantial harm to Mr. Payne in violation of his constitutional rights by their failure to properly staff and to properly train the minimal staff that was employed to adequately handel forseeable violence caused by overcrowding at Donaldson, and/or take other reasonable measures within  Donaldson to monitor the areas where Mr. Payne was attacked, ensure or maintain a safe environment for prisoners in their care, and protect Mr. Payne from prisoner on prisoner violence.

145.    The misconduct described in this Count was undertaken by the Defendants, Jones

31

and Johnson, with deliberate indifference, malice, willfulness, and/or reckless indifference to the known prisoner-on-prisoner violence and constant threats of violence at Donaldson Correctional Facility in violation of the constitutional rights of Mr. Payne and other inmates housed there.

146.    Through the deliberate indifference of Defendants, Jones and Johnson, including failure to implement measures to protect prisoners from violence, provide adequate staffing and reduce overcrowding Mr. Payne was subjected to an unreasonable risk of serious harm, and directly and proximately caused Mr. Payne to suffer damages, including pain, suffering, fear, anxiety, and other physical and psychological harms, both from the brutal assault and stabbing as well as the devastating aftermath.

## COUNT IV

**Violation of the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983**

**Deliberate Indifference to Serious Medical Needs
(Against Defendants, Dunn, Culliver, Peters, and Miree)**

147.    Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 30 through 57 and 61 through 98 of this Amended Complaint as if fully set forth herein.

148.    Prior to the assault and stabbing on June 14, 2018, all Defendants were aware of and/or deliberately indifferent that Correctional Officers at Donaldson were routinely refusing to provide or delaying the medical care for prisoners.

149.    Despite this knowledge of deprivation of medical care, the Defendants, Dunn, Culliver, Peters, and Miree, failed to adequately provide medical care within the ADOC, including at Donaldson, or take any other reasonable measures to facilitate providing timely medical care to prisoners and follow up care to inmates such as Mr. Payne.

32

150.    The direct and proximate result of these failures was a delay in medical care to life threatening injuries, unconstitutional pain and suffering, failure to initial treatment of life threatening injuries and failure to provide adequate follow-up care for recovery resulting   in violation of Mr. Payne's rights.

151.    Defendants, Dunn, Culliver, Peters, and Miree, failed to take any reasonable measures to provide adequate medical care to prisoners, including Mr. Payne, in violation of his rights.   Such inaction was undertaken intentionally, with malice, and/or with reckless indifference because they were keenly aware of the risks to Mr. Payne.

152.    Further, Defendants,  Dunn, Culliver, Peters, and Miree, did not respond timely to Mr. Payne being assaulted and stabbed because of their own misconduct.

153.    As a proximate result of their malice, deliberate indifference and/or reckless indifference to provide adequate medical care  and associated substantial risk of harm, Mr. Payne was assaulted and stabbed resulting in life threatening injuries, a delay in providing him emergency medical treatment, unnecessary exacerbation of his injuries, and more suffering.

154.    Further, Defendants, Dunn, Culliver, Peters, and Miree, were deliberately indifferent to Mr. Payne's serious medical needs, which included Mr. Payne needing to be airlifted to the hospital by helicopter to receive emergency life-saving surgery, and due, in large part, to the delay in providing him medical treatment and care because no Correctional Officers were stationed in their assigned areas.

155.    Mr. Payne's injuries were also proximately caused by the policies, practices, and customs of the Defendants, Dunn, Culliver, Peters and Miree, as detailed herein, delayed his medical treatment following the attack.

156.    At all times relevant to their involvement in this case, the Defendants, Dunn,

Culliver, Peters, and Miree, were responsible for the creation, implementation, oversight, an/or supervision of policies, practices, and procedures regarding the provision or medical care to prisoners, the training of correctional staff on the provision of medical care, and the supervision and discipline of correctional staff throughout the ADOC system, including Donaldson Correctional Facility.

157.    By failing to take any minimally adequate action to address the pervasive failure to provide timely medical care to prisoners at Donaldson as well as other ADOC facilities, the Defendant Dunn, Culliver, Peters and Miree, effectively ratified this conduct as a policy and custom; and thus, were deliberately indifferent to the problem.

158.    Defendants, Dunn, Culliver, Peters, and Miree, misconduct directly and proximately caused Mr. Payne to be subjected to an unreasonable risk of substantial harm, and caused him to suffer damages including pain, suffering, emotional distress, serious bodily and permanent injury.

## COUNT V

**Violation of the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983**

**Deliberate Indifference to Serious Medical Needs**
**(Against Defendants Sturdivant, Cunningham, Mechalske, Jones, and Johnson )**

159.    Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 30 through 57, 72 through 76, 79 through 80, 87 through 89, and 99 through 116 of this Amended Complaint as if fully set forth herein.

160.    Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, were actively and routinely refusing to provide or delaying the medical care for prisoners and/or deliberately indifferent to providing medical care for prisoners Donaldson, including Mr. Payne.

161.   Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, failed to adequately provide medical care, within the ADOC, including at Donaldson, or take any other reasonable measures to facilitate providing timely medical care to prisoners and follow up care to inmates such as Mr. Payne.

162.   The direct and proximate result of these failures was a delay in medical care to life threatening injuries, unconstitutional pain and suffering, failure to initial treatment of life threatening injuries and failure to provide adequate follow up care for recovery resulting in violation of Mr. Payne's rights.

163.   Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, failed to take any reasonable measures to provide adequate medical care to prisoners, including Mr. Payne, in violation of his rights.   Such inaction was undertaken intentionally, with malice, and/or with reckless indifference because they were keenly aware of the risks to Mr. Payne.

164.   Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, did not respond timely to Mr. Payne being assaulted and stabbed because of their own misconduct.

165.   As a proximate result of their malice, deliberate indifference and/or reckless indifference to provide adequate medical care and associated substantial risk of harm, Mr. Payne was assaulted and stabbed resulting in life threatening injuries, a delay in providing him emergency medical treatment, unnecessary exacerbation of his injuries, pain and suffering.

166.   Further, Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, were deliberately indifferent to Mr. Payne's serious medical needs, which included Mr. Payne needing to be airlifted to the hospital by helicopter to receive emergency life-saving surgery.  This was due, in large part, to the delay in providing him medical treatment and care because no Correctional Officers were stationed in their assigned areas.

35

167.     In addition, Mr. Payne's injuries and delays to his receiving medical treatment following the attack were proximately caused by the policies, practices, and customs of the Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, as detailed herein.

168.     By failing to take any minimally adequate action to provide timely medical care to Mr. Payne, the Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, effectively ratified this conduct as a policy and custom; and thus, were deliberately indifferent to the problem.

169.     Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, misconduct, individually and collectively, was the direct and proximate cause of Mr. Payne being subjected to an unreasonable risk of substantial harm, and caused him to suffer significant damages including pain, suffering, emotional distress, persistent emotional trauma, and serious and life threatenting bodily injuries, some of which are permanent.

## COUNT VI

**Violation of the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983**

**Failure to Properly Staff and Train Correctional Staff**
**(Against Defendants Dunn, Culliver, Peters, Miree, Jones and Johnson)**

170.     Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 30 through 116 of this Amended Complaint as if fully set forth herein.

171.     At all times relevant to the incident made the basis of this suit, the Defendants, Dunn, Culliver, Peters, Miree, Jones and Johnson, were responsible for confining Mr. Payne safely without depriving him of any constutional right.

172.     At all times relevant to their involvement in this case, Defendants, Dunn, Culliver, Peters, Miree, Jones and Johnson, were responsible for the creation, implementation, oversight, and/or supervision of all policies, practices and procudres pertaining to the hiring, staffing,

36

training, stationing and scheduling of correctional officers for the ADOC and Dondalson Correctional Facility.

173.    Defendants, Dunn, Culliver, Peters, Miree, Jones and Johnson, were deliberately indifferent to the risks of violence and substainial harm to prisoners, including Mr. Payne, by failing to properly staff ADOC, Dondaldson, the N Dorm and the shift in which Mr. Payne was stabbed and attacked.

174.    Defendants, Dunn, Culliver, Peters, Miree, Jones and Johnson, failed to adequately supervise, discipline, and train Donadlson correctional officers, staff the facility, or take any other reasonable measures to address these issues, create a safe environment, and prevent a violation of Mr. Payne's constitutional rights including the right to be free from violence and substainial bodily harm while in the care and custody of the ADOC and Donadlson.

175.    Defendants, Dunn, Culliver, Peters, Miree, Jones and Johnson, consciously disregarded this risk by failing to take reasonable steps to properly staff and train correctional and ADOC officers and/or staff to protect Mr. Payne from harm despite having reasonable opportunity to do so and prevent the violation of Mr. Payne's constutional rights.

176.    The misconduct described in this Count was objectively unreasonable and was undertaken willfully, intentionally, maliciously, and/or with deliberate indifference to the substantial risk of harm to Mr. Payne in violation of his constitutional rights.

177.    As a direct and proximate result of the failure of Defendants, Dunn, Culliver, Peters, Miree, Jones and Johnson, to properly staff Donaldson Correctional Facility and train their subordinates and employees, Mr. Payne was not provided a safe environment in violation of his constitutional rights.  This deliberate indifference was the direct and proximate cause of Mr. Payne's pain, suffering, emotional distress and severe bodily injuries.

## COUNT VII

**Violation of the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983**

**Failure to Intervene**
**(Against Defendants Dunn, Culliver, Peters and Miree)**

178.    Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 30 through 116 of this Amended Complaint as if fully set forth herein.

179.    At all times relevant to the incident made the basis of this suit, the Defendants, Dunn, Culliver, Peters and Miree, were responsible for confining Mr. Payne safely without depriving him of his constutional rights.

180.    At all times relevant to their involvement in this case, all Defendants were responsible for the creation, implementation, oversight, and/or supervision of policies, practices, and procedures regarding the patrolling of dormitories, overseeing inmates, and being stationed throughout the living areas, and remaining in the assigned cube.

181.    Defendants, Dunn, Culliver, Peters and Miree, were aware of the substantial risk of harm to prisoners like Mr. Payne as a result of the high volume of reported prisoner-on-prisoner violence, constant threats of prisoner-on-prisoner violence and the systemic, ongoing horrific conditions (ie. overcrowding and understaffing) at Donaldson Correctional Facility.

182.    Prior to the assault and stabbing of Mr. Payne, all Defendants also knew of overcrowding and understaffing of the ADOC facilities, including Donaldson, as well as the increased risks of violence and substantial harm to prisoners created by these issues.

183.    By failing to take any minimally adequate action to address the understaffing and overcrowding Defendants, Dunn, Culliver, Peters, and Miree ratified these as custom or policy within the ADOC, and specifically at Donaldson.  Understaffind and overcrowding resulted in no

38

Correctional Officer being present at his/her assigned location/station in the Cube and dorm area to monitor the dorm and maintain a safe environment for the inmates at the time Mr. Payne was assaulted and stabbed.

184.    Further, through their inaction, these Defendants, Dunn, Culliver, Peters, and Miree, were deliberately indifferent to the risks of violence and substantial harm to prisoners these issues created.

185.    Additionally, Defendants, Dunn, Culliver, Peters, and Miree, failed to adequately supervise, discipline, or train Donaldson correctional officers, staff the facility, or take any other reasonable measures to address these issues, create a safe environment, and prevent a violation of Mr. Payne's rights to be free from violence and substantial bodily harm while incarcerated at Donaldson.

186.    Defendants, Dunn, Culliver, Peters, and Miree, consciously disregarded this risk by failing to take reasonable steps to protect Mr. Payne from harm despite having reasonable opportunity to do so and prevent the violation of Mr. Payne's constitutional rights.

187.    The misconduct described in this Count was objectively unreasonable and was undertaken willfully, intentionally, maliciously, and/or with deliberate indifference to the substantial risk of harm to Mr. Payne in violation of his constitutional rights.

188.    As a direct and proximate result of Defendants, Dunn, Culliver, Peters, and Miree, policies, practices, and customs Mr. Payne was not provided a safe environment in violation of his constitutional rights.  This deliberate indifference was the direct and proximate cause of Mr. Payne's pain, suffering, emotional distress and severe bodily injuries.

## COUNT VIII

**Violation of the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983**

**Failure to Intervene**
**(Against Defendants Sturdivant, Cunningham, Mechalske, Jones, and Johnson)**

189.    Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 30 through 116 of this Amended Complaint as if fully set forth herein.

190.    At all times relevant to the incident made the basis of this suit, the Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, were responsible for confining Mr. Payne safely without depriving him of his constutional rights.

191.    At all times relevant to their involvement in this case, Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, were responsible for the implementation of policies, practices, and procedures regarding the patrolling of dormitories, maintaining a safe environment, overseeing inmates, and being stationed throughout the living areas, and remaining in the assigned Cube.

192.    Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, were aware of the substantial risk of harm to prisoners like Mr. Payne as a result of the high volume of reported prisoner-on-prisoner violence, constant threats of prisoner-on-prisoner violence and the systemic, ongoing horrific conditions (ie. overcrowding and understaffing) at Donaldson Correctional Facility.

193.    Prior to the assault and stabbing of Mr. Payne, Defendants Sturdivant, Cunningham, Mechalske, Jones, and Johnson, also knew of the high incident and propensity for prisoner-on-prisoner violence and overcrowding and understaffing at Donaldson, as well as the

increased risks of violence and substantial harm to prisoners created by these issues within Donaldson.

194.    Despite knowledge of these issues and the substantial risks they posed to prisoner health and safety, Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, left their assigned areas unmanned and unmonitored at the time Mr. Payne was attacked.

195.    By failing to take any minimally adequate action to address the understaffing and overcrowding, the Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, ratified these as custom or policy within the ADOC, and specifically at Donaldson.

196.    Further, through their inaction, the Defendants, Sturdivant, Cunningham, Mechalske, Jones and Johnson, were deliberately indifferent to the risks of violence and substantial harm to prisoners these issues created.

197.    Additionally, Defendants, Sturdivant, Cunningham, Mechalske, Jones and Johnson, failed to adequately staff and be present in their assigned areas, or take any other reasonable measures to address these issues, maintain a safe environment, and prevent a violation of Mr. Payne's rights to be free from violence and substantial bodily harm while incarcerated at Donaldson.

198.    Defendants, Sturdivant, Cunningham, Mechalske, Jones and Johnson, consciously disregarded this risk by failing to take reasonable steps to protect Mr. Payne from harm despite having reasonable opportunity to do so and prevent the violation of Mr. Payne's constitutional rights.

199.    The misconduct described in this Count was objectively unreasonable and was undertaken willfully, intentionally, maliciously, and/or with deliberate indifference to the substantial risk of harm to Mr. Payne in violation of his constitutional rights.

41

200.    As a direct and proximate result of the conduct of Defendants, Sturdivant, Cunningham, Mechalske, Jones and Johnson, the policies, practices, and customs Mr. Payne was not provided a safe environment in violation of his constitutional rights.   This deliberate indifference was the direct and proximate cause of Mr. Payne's pain, suffering, emotional distress and severe bodily injuries.

## COUNT IX

**Violation of the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983**

**State-Created Danger**
**(Against Defendants Dunn, Culliver, Peters, and Miree)**

201.    Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 30-118 of this Amended Complaint as if fully set forth herein.

202.    Pursuant to the Eighth and Fourteenth Amendment of the United States Constitution, Plaintiff is entitled to be free from a known and unreasonable risk of serious harm while in the custody of the State, including from a State-created danger.

203.    Defendants, Dunn, Culliver, Peters and Miree, restricted Plaintiff's ability to care for himself in prison.

204.    Defendants, Dunn, Culliver, Peters and Miree, affirmatively placed Plaintiff in a position of danger he would not have otherwise faced.

205.    Defendants, Dunn, Culliver, Peters, and Miree, failed to properly supervise, hire, staff, train, discipline, and/or otherwise make provisions to monitor the area(s) where Mr. Payne was attacked.   In doing so, these Defendants consciously disregarded the increased risks of violence and to Plaintiff's health and safety posed by their conduct resulting in a State-created danger.

42

206.    Further, Defendants, Dunn, Culliver, Peters, and Miree, acted individually and in conspiracy with each other in their failure to take reasonable steps to address the known and unreasonable risks of violence and substantial harm to Plaintiff.

207.    The misconduct described in this Count was undertaken with deliberate indifference, malice, willfulness, and reckless indifference to the rights of others, and was objectively unreasonable.

208.    The misconduct of Defendants, Dunn, Culliver, Peters, and Miree, directly and proximately caused Mr. Payne to be subjected to an unreasonable risk of serious harm, and caused him to suffer damages including pain, suffering, emotional distress and severe bodily injury.

## COUNT X

**Violation of the Eighth and Fourteenth Amendments of the United States Constitution and 42 U.S.C. § 1983**

**State-Created Danger**
**(Against Defendants Sturdivant, Cunningham, Mechalske, Jones, Johnson)**

209.    Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 30 through 118 of this Amended Complaint as if fully set forth herein.

210.    Pursuant to the Eighth and Fourteenth Amendment of the United States Constitution, Plaintiff is entitled to be free from a known and unreasonable risk of serious harm while in the custody of the State, including from a State-created danger.

211.    Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, restricted Plaintiff's ability to care for himself in prison.

212.     Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, affirmatively placed Plaintiff in a position of danger he would not have otherwise faced.

213.     Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, were not present in their assigned areas of the dorm and Cube at the time and where Mr. Payne was attacked resulting in a violation of Plaintiff's Eighth and Fourteenth Amendment rights.

214.     Further, Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, acted individually and in conspiracy with each other in their failure to take reasonable steps to address the known and unreasonable risks of violence and substantial harm to Plaintiff.

215.     The misconduct described in this Count was undertaken with deliberate indifference, malice, willfulness, and reckless indifference to the rights of others, including Mr. Payne, and was objectively unreasonable.

216.     The misconduct of Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, directly and proximately caused Mr. Payne to be subjected to an unreasonable risk of serious harm, and caused him to suffer damages including pain, suffering, emotional distress and severe bodily injury.

## COUNT XI

**State Law Civil Conspiracy**
**(Against Defendants Dunn and Culliver)**

217.     Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 30 through 118 of this Amended Complaint as if fully set forth herein.

218.     Defendants, Dunn and Culliver, and other co-conspirators not yet known to Plaintiff

acted in concert with one another, within the course of their employment with ADOC, under color of law, and/or beyond the scope of their employment in order to accomplish an unlawful purpose by unlawful means.

219.   In furtherance of the conspiracy to deprive Plaintiff of his right to be free from unreasonable harm while in State custody, Defendants, Dunn and Culliver, and other unknown co-conspirators committed overt acts and were otherwise willful participants.

220.   Among other things, Defendants, Dunn and Culliver, were responsible for and intimately involved in the creation, implementation, oversight, and/or supervision of policies, practices, and procedures regarding the failure to maintain a safe environment and provide medical treatment for Mr. Payne at Donaldson and throughout the ADOC system.

221.   The misconduct described above was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

222.   As a direct and proximate result of the illicit agreement referenced above, Plaintiff's rights were violated and he suffered damages.

## COUNT XII

### State Law Civil Conspiracy
### (Against Defendant Peters and Miree)

223.   Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 30 through 118 of this Amended Complaint as if fully set forth herein.

224.   Defendants, Peters and Miree, and other co-conspirators not yet known to Plaintiff acted in concert with one another, within the course of their employment with ADOC, under color of law, and/or beyond the scope of their employment in order to accomplish an unlawful purpose by unlawful means.

45

225.    In furtherance of the conspiracy to deprive Plaintiff of his right to be free from unreasonable harm while in State custody, Defendants, Peters and Miree, and other unknown co-conspirators committed overt acts and were otherwise willful participants.

226.    Among other things, Defendants, Peters and Miree, were responsible for and intimately involved in the creation, implementation, oversight, and/or supervision of policies, practices, and procedures regarding the failure to maintain a safe environment and provide medical treatment for Mr. Payne at Donaldson.

227.    The misconduct described above was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

228.    As a direct and proximate result of the illicit agreement referenced above, Plaintiff's rights were violated and he suffered damages.

## COUNT XIII

### State Law Civil Conspiracy
### (Against Defendant Sturdivant, Cunningham, Mechalske, Jones, Johnson)

229.    Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 30 through 118 of this Amended Complaint as if fully set forth herein.

230.    Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, and other co-conspirators not yet known to Plaintiff acted in concert with one another, within the course of their employment with ADOC, under color of law, and/or beyond the scope of their employment in order to accomplish an unlawful purpose by unlawful means.

231.    In furtherance of the conspiracy to deprive Plaintiff of his right to be free from

46

unreasonable harm while in State custody, Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson and other unknown co-conspirators committed overt acts and were otherwise willful participants.

232.     Among other things, Defendants, Sturdivant, Cunningham, Mechalske, Jones, and Johnson, were responsible for and intimately involved in the implementation of policies, practices, and procedures regarding the failure to maintain a safe environment and provide medical treatment for Mr. Payne at Donaldson.

233.     The misconduct described above was undertaken with malice, willfulness, and reckless indifference to Plaintiff's rights.

234.     As a direct and proximate result of the illicit agreement referenced above, Plaintiff's rights were violated and he suffered damages as detailed herein.

## COUNT XIV

### State Law Claim Indemnification
### (Against Defendant State of Alabama)

235.     Plaintiff adopts and incorporates by reference each and every allegation contained in the preceding paragraphs 30 through 118  of this Amended Complaint as if fully set forth herein.

236.     All Defendants were State employees acting within the course of their employment with the ADOC, under color of law, and/or beyond the scope of their employment at all relevant times herein at the time of the incident made the basis of this suit.

237.     Alabama law including Alabama Code § 36-1-6.1 requires the State to pay any judgment against each of the Individual Defendants.

### X.     ATTORNEYS' FEES

238.     In order to prosecute the causes of action alleged herein, the Plaintiff retained the undersigned attorneys to litigate the claims in this case. The Plaintiff is entitled to recover reasonable attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

### PRAYER FOR RELEIF

**WHEREFOR**E, **PREMISES CONSIDERED,** the Plaintiff respectfully requests that this Honorable Court enter an Order:

A.     Declaring a judgment in favor of Plaintiff and against Defendants, jointly and severally, under 42 U.S.C. § 1983 and Alabama law;

B.     Awarding actual, compensatory, and punitive damages to Plaintiff and against Defendants, jointly and severally, in their individual and official capacities, in an amount deemed appropriate by a jury and authorized by law;

C.     Awarding pre-judgment interest, post-judgment interest, attorneys' fees, expenses, costs, of this action as authorized by State and federal law, including under 42 U.S.C. §§ 1983 and 1988;

D.     Granting an injunction declaring the acts and omissions of the Defendants violated the Eighth and Fourteenth Amendment constitutional rights of the Plaintiff.

E.     Requiring Defendants comply with the Constitution and enter an injunction prohibiting Defendants from engaging in further violations of the Eighth Amendment;

F.     Prohibiting Defendants from retaliating against Plaintiff; and

G.     Any such other and further relief as the Court may deem just and proper.

48

## JURY DEMAND

Plaintiff hereby demands a trial by jury pursuant to Federal Rule of Civil Procedure 38(b) on all issues so triable.

Respectfully submitted, this the 17th day of November, 2020.

Respectfully Submitted,

**PEPPER & ODOM**

ANDREW S. LADORES (ASB-1469-T69P)
Attorney for Plaintiff

OF COUNSEL:
**PEPPER & ODOM**
1929 3rd Avenue North, Suite 600
Birmingham, AL 35203
Telephone:      (205) 250-1107
Mobile:          (407) 761-2166
Telecopier:     (205) 994-6746
Email:           andrew@pepperodom.com

## CERTIFICATE OF SERVICE

This certifies that I have on this the 17th day of November, 2020, served a copy of the Plaintiffs' First Amended Complaint by electronic filing to all attorneys of record on the Court's CMECF system and by U.S. mail to any parties pro-se.

OF COUNSEL